**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FRANK SHARPS, M.D.                    )
                                      )
                                      )
               Plaintiff,             )
                                      )
v.                                    )   Civil Action No. 1:07-cv-00036 (RMC)
                                      )
THE HONORABLE PETE GEREN              )
Acting Secretary of the Army          )
                                      )
               Defendant.             )
                                      )

<u>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**</u>

COMES NOW the plaintiff, Frank Sharps, M.D., by counsel and pursuant to Rule 56, Federal Rules of Civil Procedure, and moves this Court to enter summary judgment in his favor on the single count of the Complaint on the basis that no material facts are in dispute and the determination of the ABCMR that the plaintiff had not been promoted to the grade of captain on or about October 30, 1942 was arbitrary and capricious and not supported by substantial evidence in the record and contrary to the regulations then in effect.

In support of his motion, plaintiff relies upon the unopposed paragraphs of Defendant's Statement of Material Facts to Which There Is No Dispute, plaintiff's Statement of Material Facts to Which There Is No Dispute filed contemporaneously with this motion, including the Declaration of Charles M. Allen and Army Circular 161 attached thereto, and Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment and In Opposition to Defendant's Motion for Summary Judgment.

Pursuant to LCvR 7(f), plaintiff respectfully requests an oral hearing on this motion.

Plaintiff's proposed order, consistent with this motion, is attached.

Respectfully submitted,
By Counsel

/Charles M. Allen/


Charles M. Allen, Esquire (VSB No. 30183) (U.S. Dist. Ct. Bar No. (D.D.C.) MI0004)
GOODMAN, ALLEN & FILETTI, PLLC
4501 Highwoods Parkway, Suite 210
Glen Allen, Virginia 23060
Telephone:    (804)346-0600
Facsimile:     (804) 346-5954

*Counsel for Frank Sharps, M.D.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FRANK SHARPS, M.D. | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:07-cv-00036 (RMC) |
| | ) |
| THE HONORABLE PETE GEREN | ) |
| Acting Secretary of the Army | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S STATEMENT
OF MATERIAL FACTS TO WHICH THERE IS NO DISPUTE AND PLAINTIFF'S
STATEMENT OF MATERIAL FACTS FOR WHICH THERE IS NO GENUINE
DISPUTE**

COMES NOW the plaintiff, by counsel and pursuant to LCvR 7 (h) and 56.1, and states

as follows:

**Plaintiff's Opposition to Defendant's Statement of
Material Facts To Which There Is No Dispute.**

Plaintiff asserts that the following facts – for which defendant asserts there is no genuine

dispute – are disputed or are not material.  (The numbering provided here corresponds to the

numbered paragraphs of Defendant's Statement of Material Facts To Which There Is No

Genuine Dispute; citations to pages of the Administrative Record are made as "AR ___".)

**2. On July 9, 1941, the day before his departure from Fort Gordon to undergo
airborne training at Fort Benning, Georgia, the commanding officer of the Headquarters,
Station Hospital Fort Gordon, Georgia, submitted a recommendation for his promotion to
Captain.  AR 243.  The next day, on July 10, 1941, this recommendation was forwarded to
the Commanding General, 4th Corps, in Atlanta, Georgia.  AR 244.**

**Plaintiff's Response:** Plaintiff agrees that most of the substantive allegations are undisputed. However, defendant's assertion is incorrect in two regards. First, the date of the recommendation was July 9, 1942 and the action was forwarded on July 10, 1942. AR 243, 244. (This appears to have been a typographical error in defendant's pleading.) Second, the action was forwarded to the 4th Corps Area commander. AR 244. (This appears to be an oversight by defendant.)

**4. On May 21, 1942, Department of War Circular 161 was issued which provided that recommendations for promotion to captain and above would be forwarded through designated channels to the Adjutant General's office ("TAGO") for review and final approval by the Army Personnel Board. AR 384, 453. The policy required subordinate field commanders to submit recommendations for promotion to the next higher commander for consideration and further transmission, if approved. Id. The directive provided that no promotion was effective until approved by all commanders in the chain of command, and favorably acted upon by the major commander who had the authority to promote. Id.**

**Plaintiff's Response:** Plaintiff does not contest that Department of War Circular 161 was issued on May 21, 1942[1] and that that document provided processing instructions to subordinate commanders concerning promotions. However, plaintiff disputes that the various characterizations made by the defendant about the import and requirements of that document. To be sure, the characterization of that document provided by the defendant Acting Secretary in this case coincides precisely with the characterization asserted by the Army Board for the Correction of Military Records (ABCMR), but it is patently in error when the original document

---

[1] The Circular is dated May 20, 1942 and may have issued on that date. Whether it issued on the 20th or 21st does not impact this case.

is reviewed.  It is, in part, this plain and substantial evidentiary error which disposed the

ABCMR to refuse correction of the plaintiff's military record and for which plaintiff now seeks

redress.

In support of his assertion, the Acting Secretary cites pages 384 and 453 of the

Administrative Record.  Page 384 is a portion of the Memorandum of Consideration dated

January 30, 2001 prepared by the ABCMR (and from which one of the three board members

dissented, See AR 387).  While the Memorandum certainly states the conclusions about the

Circular and its effect on plaintiff's request, it does not provide the evidentiary basis for the

conclusion about the requirements for promotion in 1942.  The defendant Acting Secretary can

not shoulder the burden of demonstrating that the decision had a substantial evidentiary basis

simply by re-stating the unsupported conclusions drawn by the ABCMR.

Curiously, as is apparent from the Administrative Record, the ABCMR never actually

reviewed Circular 161.  This is apparent both because a copy of the Circular does not appear in

the Record and because the only other citation the Acting Secretary makes for the assertions

stated in this paragraph is to AR 453.  That page is a one page memo prepared by Colonel Peter

Peters in 1960 to provide advice to the ABCMR in a matter involving an applicant who appears

to have requested correction of his records for an alleged promotion error when he was not

promoted to the grade of Colonel.[2]

Significantly, neither the memo at AR 453 nor Circular 161 identifies the commander

who had been delegated the authority to approve the promotion of 1LT Sharps from the grade of

first lieutenant to captain at the relevant time in question and what pre-approval requirements

---

[2] The action pertains to Lieutenant Colonel Joseph Godley.  While the memo refers to a recommendation "for
promotion to Lieutenant Colonel" this appears to be in error since the memo also refers to the applicant as
"Lieutenant Colonel Joseph Godley" and indicates he left active duty in that grade.  What seems more likely is that
Godley was complaining that he was not promoted to Colonel.  AR 435.

were necessary for it.  For its part the Circular notes that "All promotions are made by appointment by the President."  Circular 161, ¶ II, 2.  But neither the ABCMR, the Acting Secretary nor the plaintiff contend that actual approval by the President was required in order for the promotion of 1LT Sharps to be effected.  Moreover, the Circular implies that certain promotions may be made by some commanders "on their own initiative."  Circular 161, ¶ I. 1.c.(14).

The Acting Secretary also contends that "final approval" by the "Army Personnel Board" was required in order for 1LT Sharps' promotion to be effective.  While the 2006 ABCMR decision does not make this claim, earlier decisions of the Board did.  AR 2-6; 384.  But Circular 161 makes no mention of the "Army Personnel Board" or even states or implies that a promotion to the grade of Captain or any other grade is ineffective until "final approval" by TAGO is received.  And while the memo of Colonel Peters certainly asserts that the promotion of a lieutenant colonel to the grade of colonel could not be effected without the approval of the "Army Personnel Board" there is considerable evidence in the Circular that promotions of officer to the grades of lieutenant colonel and higher were subject to additional requirements that did not pertain to promotions to company grade officers (i.e., first lieutenants and captains).  For example, paragraph I.1.d. requires that, notwithstanding that certain commanders under the authority of the Commander, Army Ground Forces could forward approved promotions for officers recommended for promotion to the grade of first lieutenant, captain and major, recommendations for promotions to the grades of lieutenant colonel and colonel were required to be forwarded through the Commanding General, Army Ground Forces.  Circular 161, ¶ I.1.d.  In short, even if Colonel Peters was correct in his description of how Circular 161 and other authorities impacted the promotion of an officer recommended for promotion to colonel, there is

good reason to doubt it accurately describes the promotion policy in effect for promotions of medical officers to the grade of captain.

But the promotion system established by Circular 161 actually demonstrates that Colonel Peters' findings, even as regards promotion to colonel, were in error. Nothing in the Circular suggests that TAGO would or could overrule a recommendation for promotion approved by a commander of a unit specifically identified in ¶ I.1.c. of the Circular. On the contrary, a "recommendation which [did] not have the approval of the appropriate authority listed in paragraph 1c [was] not [to] be forwarded to the War Department" at all. Circular 161, ¶ I.9.c. In short, what the Circular establishes is that, so long as the vacancy requirements established by the Circular were satisfied (see ¶ I.2) certain designated commanders (i.e. those identified in ¶ I.1.c.) had the authority to approve promotions of officers to grades below lieutenant colonel and the Commanding General, Army Ground Forces had the authority to approve promotions of officers who did not fall under the command of other designated commanders with promotion authority and to approve all promotions in the grade of lieutenant colonel and higher. It is also clear that promotion actions necessarily were to be forwarded to TAGO, but it is evident from the Circular that the functions performed by the TAGO were purely administrative; the decision to promote rested exclusively with the designated commanders.

Finally, plaintiff contends that there is a genuine dispute over the last sentence of the assertions made by the Acting Secretary in this section (i.e. "The directive provided that no promotion was effective until approved by all commanders in the chain of command, and favorably acted upon by the major commander who had the authority to promote."), at least as regards the meaning of it advanced by the Acting Secretary in his Motion. One could, of course, read this sentence as setting forth the rather unremarkable proposition that a promotion approval

5

should be preceded by a recommendation from an immediate supervisor who had had ample opportunity to observe the officer and such intermediate commanders as the Circular or other authority might require.  But this is not the meaning that the Acting Secretary is urging.  He insists that in order for a promotion to be effective, the officer's immediate supervisors and commanders **at the time the promotion is to be implemented** must recommend the promotion in order for it to be effective.  Thus, the Acting Secretary argues that even though 1LT Sharps had been recommended by his immediate commander before he left Fort Gordon to attend airborne training, even though all of the required intermediate commanders acted favorably upon the recommendation, a commander superior to both the losing and gaining units (i.e. the Commanding General, Army Ground Forces) could not approve the action, and, therefore, promote him.[3]  See, Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, p. 7.

Such an assertion is contrary to reason and reality.  First, given the frequency with which both military personnel and military units are re-assigned the rule advocated by the Acting Secretary would be unworkable in peacetime and impossible in wartime, and particularly so in an era when electronic communications were, at best, uncommon.  According to the rule advocated by the Acting Secretary, once a promotion action is initiated, it must be processed to completion before the individual or the unit is reassigned or it must be re-initiated.  Such an irrational process was not described by Colonel Peters' memo (AR 453) and it was not required by Circular 161.  Second, the actions by the commanders in this case demonstrate that such a rule did not exist.  If it did exist, no reasonable commander, knowing that the officer in question

---

[3] Defendant also makes the specious argument that the Commanding General, Army Forces Command is not a superior promotion authority to the Commanding General, Pacific Theater.  That argument is addressed in Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment and In Opposition to Defendant's Motion for Summary Judgment.

would be leaving the command within a day, would prepare a recommendation for promotion

and forward it to the next superior commander for action.  Rather, he would simply have written

the gaining commander a letter suggesting that the gaining commander process a

recommendation.  The commanders, including the Station Hospital Commander, the Commander

of the 505th, and Commander, Airborne Command and the Commander, Army Ground Forces,

each acted as if the earlier recommendations made could have import and nothing in the Circular

suggests otherwise.

In summary, there is a genuine dispute about whether Department of War Circular 161

required TAGO or the Army Personnel Board to give "final approval" to the plaintiff's

promotion before it was effective.  On the contrary, the Circular itself is clear evidence that

designated commanders, including the Commanding General, Army Ground Forces were the

final authority required for promotions.  Additionally, there is a genuine dispute about whether a

promotion could only be effective when it was approved by all commanders in the chain of

command, and favorably acted upon by the major commander who had the authority to promote

at least to the extent that this assertion is urged to mean that recommendations for promotion

must have been received from the commanders of the officer in question at the time the

promotion is effected.

**6.  On October 9, 1942, Dr. Sharps was transferred to the 503rd PIR at Fort Bragg,**

**North Carolina.  AR 550, 611.  On October 20, 1942, Dr. Sharps deployed with the 503rd**

**PIR to the Pacific Theater of Operations during World War II.  AR 461.**

**Plaintiff's Response:**   Plaintiff agrees that 1LT Sharps was assigned to the 503rd on

October 9, 1942.  He also agrees that the 503rd departed San Francisco on October 20, 1942.

However, the neither the record referenced here, i.e. AR 461, nor any other documentation in the

Administration Record establishes that the 503rd PIR was assigned operationally or otherwise to the Commander, Pacific Theater on that date (October 20, 1942). Informal histories of the 503rd PIR, note that the unit first deployed to the Panama Canal Zone and landed in Cairns, Australia on December 2, 1942. AR 409, See also, http://www.ww2-airborne.us/18corps/503_overview.html

**7. On October 30, 1942, Dr. Sharps' recommendation for promotion to Captain was approved by the Headquarters, Army Ground Forces, Washington, D.C. and dispatched to TAGO. AR 242. TAGO dispatched the recommendation for promotion to the Commander of the 503rd for a recommendation. AR 241**

**Plaintiff's Response:**  Plaintiff agrees that his promotion was "approved" by the Commanding General, Army Ground Forces on October 30, 1942. Plaintiff also agrees that the Commanding General, Army Ground Forces, forwarded the approved promotion to TAGO as required by Circular 161. But plaintiff denies that AR 241 or any evidence in the record demonstrates that TAGO sent the action to the Commander of the 503rd for a "recommendation."

First, the 11th indorsement from TAGO to the 503rd forwarding the approved recommendation is dated November 3, 1942 is addressed to the Commanding Officer, 503rd PIR and reads, in its entirety:

Attention is invited to the first indorsement and subsequent indorsements.

By Order of the Secretary of War:

/s/ Adjutant General

AR 433. Nothing in the indorsement solicits a further recommendation from the Commander of the 503rd, requests further processing, or suggests that the action was incomplete. Notably the "subsequent indorsements" included the 10th indorsement from the Commanding General, Army

Ground Forces, consisting of exactly one word, "Approved." The only fair inference from the plain language of the 11th indorsement and its reference to the original recommendation and the subsequent actions on it was that the promotion had been approved and the Commander of the 503rd was to execute it.

Whether the Commander of the 503rd failed to promote 1LT Sharps because he never received the completed approved action from TAGO or because he received the indorsement and simply ignored it, is unknown. But this much is clear: AR 241, the documentation that the Acting Secretary relies upon for the proposition that TAGO had requested a recommendation from the Commander of the 503rd does not support that assertion. First, as regards the approved promotion action, every Headquarters through which it traveled included an indorsement numbered sequentially and most of them included the date of the originating correspondence in the information header. The following table summarizes these:

| Sending Unit (AR reference) | Receiving Unit | Date | Ind. No. | Contents and Attachments |
| --- | --- | --- | --- | --- |
| 505th PIR (AR 427) | TAGO, Wash. DC | 9/8/42 | | Requested information on the disposition of the promotion action initiated 7/10/42. Listed enclosures included the original recommendation letter of 7/9/42 (AR 424) and the extract letter of 7/10/42 (AR 423). Special Order (SO) no. 166 is also listed but is not part of the Administrative Record. |
| TAGO (AR 428) | 505th PIR | 9/16/42 | 1 | TAGO reports never receiving the original action |
| 505th PIR (AR 428) | Station Hospital, Camp Gordon, GA | 9/22/42 | 2 | The 505th requests that the original promotion action be traced before a new one is initiated. |
| Office of the Surgeon, Camp Gordon, GA (AR | HQ, Camp Gordon | 9/25/42 | 3 | The hospital reports the original action was sent to HQ, Camp Gordon on 7/10/42 and by that |

| | | | | |
|---|---|---|---|---|
| 429) | | | | HQ to the CG, 4th Corps Area, Atlanta, GA on 7/11/42. |
| HQ, Camp Gordon (AR 429) | 505th PIR | 9/28/42 | 4 | Apprises the 505th that the original action went to 4th Corps Area on 7/11/42 |
| 505th PIR (AR 430) | 4th Service Command, Atlanta, GA | 9/30/42 | 5 | Requesting that 4th Service Command trace the promotion action |
| 4th Service Command (AR 430) | Airborne Command, Ft. Bragg, NC | 10/9/42 | 6 | Apprising Airborne Command that the original action had been forwarded by 2nd indorsement to Airborne Command on 7/21/42. See AR 425-26, comprising the original action and the first and second indorsements as reported herein. |
| Airborne Command (AR 431) | Fourth Service Command | 10/14/42 | 7 | Reporting the non-receipt of the original action and the two forwarding endorsements |
| Fourth Service Command (AR 431) | Airborne Command | 10/20/42 | 8 | Inclosing copies of the original action and the two forwarding indorsements, i.e. AR 427-428 |
| Airborne Command (AR 432) | Army Ground Forces | 10/27/42 | 9 | Forwarding the action, apprising Army Ground Forces that 1LT Sharps was now assigned to the 503rd PIR and giving the forwarding address for the 503rd. |
| Army Ground Forces (AR 432) | TAGO | 10/30/41 | 10 | "Approved." |
| TAGO (AR 433) | 503rd PIR | 11/3/42 | 11 | Forwarding the action for execution. |

The document which the Acting Secretary implies was prepared in response to the 11th

indorsement, however, is designated a "Wrapper Ind." which originated at Headquarters, Sixth

Army and Colonel Kinsler's response thereto, identified as a "2nd Wrapper Ind." which

originated at the 503rd and was sent back to Headquarters, Sixth Army.  AR 241.  Had Kinsler

been responding to the 11th indorsement from TAGO, that action would have originated in the

503rd and it would have been identified as the "12th indorsement."  Second, the nearly 9 month

delay between the 11th indorsement by TAGO and the "Wrapper Ind." of the Sixth Army

confirms that the action was not in response to the TAGO missive.  Concededly, the unit had

deployed to Australia and some delay in communications would be anticipated.  But the 503rd

did not deploy for combat until September 1943, (AR 409) and it seems entirely implausible that

it took almost nine months for the 503rd to receive and take additional action on the approved

promotion.  Finally, the substantive contents of the Wrapper Ind. are not consistent with that

action being in response to the 11th indorsement.  Had the 503rd received TAGO's 11th

indorsement and forwarded it to Sixth Army with text suggesting promotion was not

recommended, it is likely that the Sixth Army would simply have closed the action without

further action.[4]  Instead they returned the action to the commander with a reference to

information that could have facilitated the promotion of 1LT Sharps.  AR 241.  Pursuant to

USAFE Circular 36, the Tables of Organization for medical officers authorized officers in the

grade of either first lieutenant or captain.  AR 246.  Accordingly, the Wrapper Ind. from Sixth

Army simply informs the Commander of the 503rd that the easiest way to promote 1LT Sharps

would be a recommendation for promotion as permitted by Circular 161 (and because a captain

was authorized by Circular 36), which according to Circular 161, could be approved by the Sixth

Army commander and forwarded directly to TAGO.  Circular 161, ¶¶1.c.4 and 1.d.

In short, the most plausible explanation for AR 241, is that it was the response of Sixth

Army to a new promotion tracer action initiated by 1LT Sharps because he had not yet learned

that the first action had been approved.  This is further confirmed by the submission his attorney

James T. Orlow made to the ABCMR in 1973.  AR 413-422.  In that submission, counsel

outlined the course of the original action and its eleven indorsements and noted that this evidence

---

[4] That is exactly the response the Sixth Army made after Colonel Kinsler indicated he would not recommend 1LT Sharps for promotion.  See AR 361.

had not been available to be submitted in an ABCMR petition filed in 1961.  AR 416.   Just as

significantly, that portion of the Administrative Record, identified by the Acting Secretary as the

papers and documents comprising the 1961 submission and the papers considered by the

ABCMR did not contain the approved promotion action.  AR 446-603, see also, Defendant's

Statement of Material Facts to Which There Is No Genuine Dispute, ¶ 17.

In summary, the assertion that TAGO sent the approved promotion action to the 503rd for

a "recommendation" from the commander of that unit is not supported by evidence in the record

and is disputed.

**10.  On July 26, 1943, the Headquarters, Sixth Army forwarded Dr. Sharps'**

**recommendation for promotion to the Regimental Commander for the 503rd PIR, Colonel**

**Kenneth Kinsler.  AR 241.  Colonel Kinsler recommended that Dr. Sharps not be promoted**

**to captain at that time.  Id.**

**Plaintiff's response:**  As noted above the evidence in the administrative record does not

support the conclusion that the papers forwarded to Colonel Kinsler included the approved

promotion action.  Plaintiff agrees, however, that the Sixth Army forwarded the Wrapper Ind.

which appears at AR 241 to Colonel Kinsler and Kinsler responded that he did not recommend

promotion of 1LT Sharps.

**19.  On March 25, 2000, Dr. Sharps submitted his third application to the ABCMR.**

**AR 388-410.  . . . .  The dissenting member of the ABCMR stated that as there was no**

**evidence of a recommendation by the Commander of the 503rd PIR, he would give the**

**benefit of the doubt to the applicant and grant him the requested relief.  AR. 387.**

**Plaintiff's response:**  Most of the factual assertions in this lengthy paragraph are not

disputed by the plaintiff and, therefore, the paragraph is not reproduced here in its entirety.

Nevertheless, the dissenter's opinion, set forth at AR 387, does not permit the characterization provided here by the Acting Secretary. What the text of the dissent does demonstrate, however, is that, upon the evidence presented, the dissenting Board member found that the approved promotion action never reached the 503rd. Thus, he wrote, "While there is no record of recommendation from 503rd Parachute I Regiment, there is no evidence to show they got it in the 1st place." AR 387. In summary, the Acting Secretary's characterization of the dissent as simply giving 1LT Sharps the benefit of the doubt is not supported by the record. Rather the dissent concluded that the promotion action never reached the 503rd.

**Paragraphs 8, 11, 12, 15, and 16.**

**Plaintiff's Response:** The paragraphs identified here from Defendant's Statement of Material Facts To Which There Is No Dispute address two issues: a) that 1LT Sharps requested transfer from 503rd PIR and b) that he suffered service-connected medical conditions which were treated, but for which he was ultimately discharged from the service. Neither of these is material to whether the 1942 promotion action was processed to completion, whether the failure of Colonel Kinsler to recommend him for promotion was unjust or whether the efficiency reports he received while assigned in the 503rd were unfairly deflated such that he became ineligible for the Terminal Leave Promotion Policy. Perhaps the Acting Secretary has included them in his statement simply for completeness. But their insertion here suggests that he may be urging this Court to use them in the same improper way they were utilized by the ABCMR and the Deputy Assistant Secretary of the Army (DASA): to unfairly discredit the applicant's complaints that he was unjustly and inequitably treated as regards his promotion to captain. In February 2001, The DASA, Karl F. Schneider, in consideration of whether to adopt the minority or majority view of the ABCMR, asked the Board staff, "What's the down side of promoting him? Did he see

significant combat?"  In response, Board staffer and analyst Bob McGowan first downplayed the

significant of the applicant's combat experience ("As far as I can tell, he only saw combat in one

short campaign") then offered this explanation for why 1LT Sharps' complaint was not credible:

> I don't think he got along with his chain of command.  He states that the Regt Cdr
> and Regt Surgeon were "guilty of gross negligence and incompetence."  He adds that
> he wrote to TAGO about them and an investigation was conducted.  His medical
> files indicate that part of his psychotic behavior included his rantings about not
> getting a "square deal from his superior officers."  My guess is that if his
> recommendation for promotion to CPT did reach the 503rd, his cdr was not favorably
> disposed to support it.

AR 378.  Directly after this comment, ABCMR director Carl Chun adds, "Per his application,

'my promotion was unfairly blocked' (by Cdr and Regt Surgeon)." *Id.* McGowan concludes this

inflammatory and improper memo by reminding the DASA of the financial impact a favorable

ABCMR decision may have:

> Since he's retired, a promotion would mean money.  He draws $1330 today (as a
> 1LT) as opposed to $1596 (as a CPT).  If the Barring Statute operates in this case, I
> think he'd get $30K-40K.  If not, base on a 1520% increase in his retired pay since
> 1945, my best SWAG is $80K-160K.

AR 378.

In summary, plaintiff asserts that the factual assertions of paragraphs of paragraphs 8, 11, 12, 15

and 16 are not material.

### Plaintiff's Statement of Material Facts To Which There Is No Dispute

Plaintiff submits that the following are material facts to which there is no genuine

dispute:

1.      On July 10, 1942, the Station Hospital, Office of the Surgeon, Camp Gordon, prepared an

extract of a letter containing the recommendation for the promotion of 1LT Frank Sharps.  The

letter cited as authority for the recommendation the instructions contained in the 8th Indorsement,

Hq. 4th Corps Area, File AG 210.2–AUS (6-8-42) 0, Dated July 6, 1942 on letter Hq. 4th Corps

Area, File 210.2-AUS, subject: Promotion of Officers in the Army of the United States under Circular Number 111, War Department, 1942, dated June 8, 1942.  AR 423.

2.      A true and correct copy of Army Circular 161 is attached to the Declaration of Charles M. Allen filed contemporaneously with this statement.  Declaration of Charles M. Allen.

3.      Army Circular 161 rescinded Section I of Army Circular 111 and was issued on May 20, 1942.

4.      ABCMR did not, in any of the proceedings held in the case of 1LT Frank Sharps consider or review Army Circular 111 or the 8th Indorsement or the Hq. 4th Corps Area letter referred to in ¶ 1.  AR 1-694.

5.      ABCMR did not, in any of the proceedings held in the case of 1LT Frank Sharps review Army Circular 161.  AR 1-694.

6.      In determining its conclusions about the promotion policies and procedures in effect in 1942, ABCMR relied exclusively upon a memorandum prepared by Colonel Peter Peters in January 1960. AR 453.

7.      The memorandum prepared by Colonel Peters and referred to in ¶ 6 was drafted to explain the promotion policy as it applied to an officer recommended for promotion to the grade of colonel or lieutenant colonel.  AR 453.

8.      Army Circular 161 does not refer to the Army Personnel Board.  Army Circular 161 attached to the Declaration of Charles M. Allen.

9.      Commanders designated in ¶ I.1.c., Army Circular 161 had the authority to approve promotions of officers from the grade of first lieutenant to captain. *Id.*

10.     The Commanding General, Army Ground Forces, had the authority to approve promotions of officers from the grade of first lieutenant to captain. *Id.*

11.     When the Commanding General, Army Ground Forces approved the promotion of 1LT Sharps to the grade of captain on October 30, 1942, he knew that 1LT Sharps had been re-assigned from the 505th PIR to the 503rd PIR and that the 503rd had deployed from the continental United States for duties in the Pacific Theater.  AR 432.

12.     The approved promotion action comprising the original action and 10 indorsements was forwarded to TAGO on October 30, 1942.  AR.  427-433.

13.     An 11th indorsement for the approved promotion action indicates that TAGO forwarded the action to the 503rd on November 3, 1942.  AR 433.

14.     The text of the 11th indorsement reads, in its entirety, "Attention is invited to the first indorsement and subsequent indorsements."  AR 434.

15.     The Wrapper Ind. prepared by Headquarters, Sixth Army on July 26, 1943, was not prepared in response to the 11th indorsement forwarded by TAGO on November 3, 1942. AR 241; 246; 409; 427-433.

16.     The materials considered by the ABCMR in 1LT Sharps first petition for relief did not include the original action and the 11 indorsements comprising the approved promotion action (i.e. AR 427-433).  AR 446-603.

17.     In the second ABCMR petition filed by 1LT Sharps, the Executive Secretary of the ABCMR requested that the Promotion Section, TAGO provide the Board with information "relative to the promotion procedures in effect at the time applicant was recommended for such promotion" and "whether or not the promotion would have been a routine matter had the recommendation not been lost, together with any information which might assist the Board in determining the merits of the case."  AR 454.

18.     In response to the request, the Promotion Section, TAGO referred the Board to the memo of Colonel Peters referred to in ¶¶ 6 and 7 above.  AR 453; 455.

19.     Neither the memo by Colonel Peters, nor any other document in the record of the materials considered by the ABCMR upon the second petition identifies Army Ground Forces as a "major promoting jurisdiction" separate from the Pacific Theater.

20.     In the second ABCMR action, the ABCMR concluded that, despite the fact the Commanding General, Army Ground Forces approved the promotion of 1LT Sharps with the knowledge that 1LT Sharps had been re-assigned to the 503rd PIR and the 503rd had deployed to the Pacific Theater, and without review of Army Circular 161, the Commanding General, Army Ground Forces lacked promotion authority over 1LT Sharps.  AR 411-412; 432; 453.

21.     On October 30, 1942, the Commanding General, Army Ground Forces had the authority to approve the promotion of 1LT Sharps.  Circular 161; AR 432.

22.     After the ABCMR split 2-1 upon its decision on the third petition of 1LT Sharps, Bob McGowan, an ABCMR staff member and analyst prepared memo to respond to questions raised by the Deputy Assistant Secretary of the Army ("DASA") who had the authority to approve the minority decision.  The memo stated in part:

> I don't think he got along with his chain of command.  He states that the Regt Cdr and Regt Surgeon were "guilty of gross negligence and incompetence."  He adds that he wrote to TAGO about them and an investigation was conducted.  His medical files indicate that part of his psychotic behavior included his rantings about not getting a "square deal from his superior officers."  My guess is that if his recommendation for promotion to CPT did reach the 503rd, his cdr was not favorably disposed to support it.

AR 378.

23.     ABCMR Director Carl Chun reviewed the memo identified in ¶ 19 then wrote "Per his application, 'my promotion was unfairly blocked' (by Cdr and Regt Surgeon)," and forwarded it to the DASA.  *Id.*

24.     The memo prepared by McGowan and forwarded to the DASA also included the following comment:

> Since he's retired, a promotion would mean money.  He draws $1330 today (as a 1LT) as opposed to $1596 (as a CPT).  If the Barring Statute operates in this case, I think he'd get $30K-40K.  If not, based on a 1520% increase in his retired pay since 1945, my best SWAG is $80K-160K.

AR 378.

25.     The new evidence 1LT Sharps presented to the ABCMR in his petition of September 15, 2005 included a report of the investigation conducted by Colonel John E. Grose, the Inspector General for the Sixth Army.  AR 15-25.

26.     The investigation conducted by Colonel John E. Grose was initiated by the order of the Commander, Sixth Army, on October 14, 1943 and Colonel Kenneth Kinsler, the Commander, 503rd PIR was apprised of it on October 16, 1943.  AR 15.

27.     Beginning on October 16, 1943 and concluding on or before October 25, 1943, Colonel Grose took testimony from officers and enlisted persons in the 503rd.  AR 15-221

28.     Colonel Grose drafted his report of investigation on or before October 25, 1943.  AR 15-

29.     On October 21, 1943, after he was informed of the investigation, but before Colonel Grose complete drafting his report, Colonel Kinsler committed suicide.  AR 23; 26.

30.     In his report, Colonel Grose found that many officers and enlisted men complained that Colonel Kinsler used favoritism in the execution of his promotion authority.  AR 18.

31.     In his report, Colonel Grose found that officers of the 503rd complained that the promotion policy in the unit was unfair and uncertain AR 18-19.

32.     In his recommendations for the new commander, Colonel Grose wrote, "That the

regimental commander be informed of the deficiencies noted in the administration of the

regiment in para. 18 above and impressed with the necessity for a fair and impartial promotion

policy."  AR 23.

Respectfully submitted,
By Counsel


/Charles M. Allen/



Charles M. Allen, Esquire (VSB No. 30183) (U.S. Dist. Ct. Bar No. (D.D.C.) MI0004)
GOODMAN, ALLEN & FILETTI, PLLC
4501 Highwoods Parkway, Suite 210
Glen Allen, Virginia 23060
Telephone:     (804)346-0600
Facsimile:     (804) 346-5954

*Counsel for Frank Sharps, M.D.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FRANK SHARPS, M.D. | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 1:07-cv-00036 (RMC) |
| | ) |
| THE HONORABLE PETE GEREN | ) |
| Acting Secretary of the Army | ) |
| | ) |
| Defendant. | ) |
| | ) |

**<u>DECLARATION</u>**

I, CHARLES M. ALLEN, under penalty of perjury, declare as follows:

1.      I, Charles M. Allen, am the lead counsel of record for the plaintiff in this case.

2.      On or about April 4, 2007, Elizabeth Griffin Robertson, an associate of my law firm who is assisting on this case, communicated with counsel for the defendant, Steven M. Ranieri, attempting to obtain a copy of Army Circular 161 dated 21 May 1942.

3.      On or about April 6, 2007, counsel for the defendant forwarded a copy of a document which he represented had been obtained by Major Rebecca E. Ausprung, Army Litigation Division and which is purported to be a copy of Army Circular 161.

4.      A copy of Army Circular 161 which was produced as described is attached hereto.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Charles M. Allen

*See Cir 169  1943*  *Cir 290 1942*

[Cm. 161]

WAR DEPARTMENT,
WASHINGTON, May 20, 1942.

CIRCULAR }
No. 161 }

Section
Promotion of officers in the Army of the United States-------------------- I
Special promotion system, Appendix B, MR 1–3___ --------------------- II

1. *Promotion of officers in the Army of the United States.*—Section I, Circular No. 111, War Department, 1942, as amended by section 1, Circular No. 115 and section IV, Circular No. 144, War Department, 1942, is rescinded and the following substituted therefor:

1. *a.* The peacetime systems of promotion prescribed for officers of the National Guard, the Officers' Reserve Corps, and retired Regular Army officers remain discontinued. All previous instructions on the subject of promotion of officers revoked by Circular No. 1, War Department, 1942, remain revoked. Other provisions of Circular No. 1, War Department, 1942, are rescinded.

*b.* The temporary promotion system applicable to all officers of the Army of the United States prescribed in Appendix B, "Special Promotion System", MR 1–3, October 30, 1939 (sec. II of this circular), as modified hereinafter, is continued.

*c.* Except as mentioned in *d* below, recommendations for promotion will be forwarded direct to The Adjutant General by the following for elements under their jurisdiction who are not granted authority herein to forward recommendations direct to the War Department:

(1) Commanding General, Army Ground Forces.
(2) Commanding General, Army Air Forces.
(3) Commanding General, Services of Supply.     *Cir 214 1942*
(4) Army commanders (see *d* below).
(5) Department commanders.
(6) Defense command commanders.
(7) Corps area commanders.
(8) Independent Army corps commanders (see *d* below).
(9) Theater commanders.
(10) Chiefs of supply services.
(11) Independent task force commanders (see *d* below).
(12) Provost Marshal General.
(13) Chief of the Armored Force (see *d* below).
(14) Other commanders of field force units who are responsible directly to the War Department and who are not authorized to promote officers on their own initiative.
(15) Heads of divisions of the War Department General Staff and other War Department agencies and activities not otherwise provided for.

*d.* All recommendations for promotions of officers to grades of colonel and lieutenant colonel from units and activities under control of the Commanding General, Army Ground Forces, will be forwarded through headquarters, Army Ground Forces. Recommendations for promotions of officers to lower grades from these units may be forwarded direct to The Adjutant General by the authorities listed in *c* above.

2. *a.* Recommendations for promotion will be limited to existing position vacancies (see par. 6, app. B, MR 1–3, (sec. II of this circular)). Recommendations for promotion to grades for which no authorized position vacancies exist will not be forwarded. Position vacancies are those positions

*Cir 155 1943*
*Cir 15 1943*
*Cir 40 1943*
*Cir 185 1943*

434762°—42

[Cir. 161]

2

authorized by Tables of Organization or an allotment to an installation which are unfilled or are occupied by an officer of a grade lower than that authorized.

(1) No position vacancy exists when an officer of an arm or service and grade appropriate to the position is assigned to the command but has not yet joined, is absent for any reason, is occupying a position prescribed for a subordinate grade, or is occupying a special position set up by a command or agency subordinate to the War Department.

(2) No position vacancy exists when an officer of an arm or service appropriate to the position but of a grade higher than that prescribed for the position is occupying the position or is surplus. When a surplus exists in a higher grade of an arm or service, existing position vacancies (if any) are reduced by a similar number in the next lower grade of the appropriate arm or service; and officers of the lower grade may, of necessity, have to occupy positions of a second and third lower grade.

(3) A position vacancy may exist in a subordinate command or activity but not in the higher unit or activity because of a surplus of officers of an appropriate arm or service and appropriate or higher grade within the jurisdiction of the higher commander, who are not occupying positions appropriate to the grade and arm or service as prescribed by Tables of Organization or other authorized War Department allotment. Hence, final recommendations for promotion must be based upon existing position vacancies under the jurisdiction of the authorities mentioned in paragraph 1a. The following will be considered as separate activities:

(a) Each replacement training center, each service school, and each other major subordinate activity under the Commanding General, Army Ground Forces.

(b) Each replacement training center, each service school, and each general depot, each port of embarkation, and each other major subordinate activity under the Commanding General, Services of Supply.

(c) Each air force, each replacement training center, each service school, and each other major subordinate activity under the Commanding General, Army Air Forces.

(4) A position vacancy does exist when an available officer of an arm or service and grade appropriate to the position is occupying a position prescribed for a higher grade of that arm or service.

b. Position vacancies in all units will be kept filled as far as possible by higher commanders by transfer and reassignment of officers of appropriate arms or services and grades. Surplus officers (over and above the overstrength authorized certain units of the field forces) in a subordinate activity will be transferred promptly by the higher commander to appropriate positions in another activity under his jurisdiction. When necessary for their absorption, surplus officers (less the authorized overstrength) will be reported to the War Department for reassignment. Authorized overstrength in all grades above second lieutenant is chargeable against positions authorized by Tables of Organization or tables of allotment. No authorized overstrength in any grade will be filled by promotion.

3. Commanding generals who have superior jurisdiction over troops stationed outside the continental limits of the United States will establish the percentages of position vacancies which may be filled and maintained by

3                                            [Cir. 161]

promotion within those commands as indicated in paragraph 8, Appendix B, MR 1–3, and recommendations for promotion will be based thereon.

4. For troops stationed within the continental limits of the United States, Appendix B, MR 1–3 (sec. II of this circular), is modified as follows:

Except for officers detailed to Army Air Forces schools and parachute schools to take a course of training involving an absence of 3 months or more or involving possible transfer to the Army Air Forces or to parachute units, paragraph 5, Appendix B, MR 1–3, will not apply. Officers detailed to such Army Air Forces and parachute schools for these courses will be transferred to the schools and dropped from the rolls of their organization.

5. Vacancies in the grade of general officer will not be filled by promotion under this authority. Unless and until filled by a general officer, position vacancies existing in those grades may be filled by promotions to the grade of colonel.

6. *a.* The sole criterion for promotion must be demonstrated fitness and capacity for the duties and responsibilities of the next higher grade for which a position vacancy exists.

*b.* Except in units engaged in combat in an active theater, normally no officer will be promoted more than one grade at a time and no officer once promoted will be again promoted until he will have served at least 6 months in the grade to which last promoted.

*c.* Normally, no officer except a second lieutenant will be recommended for promotion until he has, by actual outstanding performance of duty for a period of at least 6 months, demonstrated his fitness for promotion to the next higher grade and his capacity for its responsibilities. When, in the opinion of a general officer who has personal knowledge of the circumstances, an officer other than a second lieutenant has clearly demonstrated his fitness for promotion in a lesser period of time, the War Department will give consideration to waiving this requirement, provided the recommendation *clearly* sets forth the circumstances which prompt the recommendation and justify the promotion. No recommendation which fails to set forth clearly the circumstances and the qualities inherent in the individual which warrant his promotion will be given favorable consideration by the War Department.

*d.* A second lieutenant may be recommended for promotion to fill an existing position vacancy at any time after he has satisfactorily demonstrated his fitness for the next higher grade and his capacity for its responsibilities.

7. Recommendations for promotion and approval of recommendations from subordinate commanders are functions of command which cannot be delegated to a staff officer. In the application of paragraph 7, Appendix B, MR 1–3, position vacancies existing in divisions, regiments, and similar or smaller separate commands will be filled by unit promotion only to the extent which will promote the best interest of the service and efficiency of the Army. When, in the opinion of a higher commander, efficiency of the Army will be served best by promotion of the best-fitted officer in one unit and his transfer to another to fill an existing position vacancy therein, this procedure will be followed. The primary purpose of temporary promotion is to enhance the efficiency of the Army by promotion of the best fitted to fill existing position vacancies. This end will

[Cir. 101]                            4 

be achieved only by a careful study by each echelon of command of each recommendation for promotion passing through its headquarters.

6. Because of the tremendous expansion in the Army Air Forces and Army Air Forces activities, promotion in that arm and its activities will be rapid as compared to promotion in other arms or services and activities. In order to maintain as nearly as possible an equitable parity of promotion in the Army of the United States of officers of the Air Corps and of officers of other arms and services on duty with Army Air Forces activities with promotion of officers on duty with and belonging to other arms and services, the following will govern:

*a.* Generally, temporary promotion of officers of the Air Corps and of officers of the ground arms and services on duty with Army Air Forces ground installations (less officers assigned to troop units of the ground arms and services serving with the Army Air Forces) will be accomplished in the Air Corps under act of Congress approved June 16, 1936, and act of Congress approved February 18, 1942, whichever is applicable.

*b.* Promotion of officers of the categories mentioned in *a* above to temporary grades in the Army of the United States under other sections of the National Defense Act will be accomplished only at such a rate as will maintain as nearly as possible their general relative position with respect to other officers of their respective permanent grades on the lineal list. This will be determined not by a few isolated cases, but by the temporary grades held by a majority of officers of the ground arms and services of their respective permanent grades and length of service.

*c.* When, because of the nature of the duties being performed by an officer of the Air Corps or by an officer of another arm or service on duty with the Army Air Forces, it is necessary to protect his seniority with respect to other officers commissioned in the Army of the United States, this promotion may be accomplished in the Army of the United States under the provisions of this circular.

*d.* When promotion of an officer of the Air Corps or of an officer of the ground arms and services on duty with an Army Air Forces installation is authorized under the provisions of *b* and *c* above, such promotion will be limited to the next grade above that then held by him in the Army of the United States under any section of the National Defense Act. Grades held in the Air Corps or in any other arm or service under the provisions of acts mentioned in *a* above will not be confirmed under the provisions of this circular under any other section of the National Defense Act. Any officer, other than an officer of the Regular Army Air Corps, ceases to hold the grade granted under the provisions of acts mentioned in *a* above when he is released from duty with the Army Air Forces or with Army Air Forces installations and assumes duties with units or activities belonging to the ground arms and services.

*e.* All officers of the Air Corps on duty with units and activities of the ground arms and services, and not belonging to an Army Air Forces unit or activity attached thereto, are eligible for promotion in the Army of the United States under this circular to fill appropriate existing position vacancies under the same terms as an officer of the ground arms and services.

*f.* Officers of the Regular Army Air Corps on duty with units and activities of the ground arms and services, and not belonging to an Army Air Forces unit or activity attached thereto, are, at the discretion of the Com-

5                                                    [Cir. 161]

manding General, Army Air Forces, eligible for temporary promotion to the next higher grade in the Air Corps under the provisions of acts mentioned in *a* above, without reference to the commander under whom the officers concerned may be serving. When so promoted under those acts, such officers are chargeable against the Table of Organization or table of allotment prescribed for the unit or activity concerned only in the highest temporary grade held by them (or permanent grade if no temporary grade is held) in the Army of the United States under other acts of Congress.

9. *a.* Each recommendation for promotion will conform to the requirements of paragraphs 2 and 6, and will pass through the normal channels of command, except as indicated in paragraph 1*c* and *d.* Recommendations for promotion of Air Corps officers will be forwarded to The Adjutant General through the Commanding General, Army Air Forces. In order to facilitate administrative procedures in the office of The Adjutant General whose records are separated by component—

(1) Recommendations for promotion of officers of the Regular Army, National Guard, Officers' Reserve Corps, and Army of the United States will be separated by component. In no case will recommendations concerning officers of two components be combined in the same letter.

(2) Recommendations for promotion to grades of major and below of officers of a single component of the Army may be handled as a group and may be indorsed with a general wrapper indorsement provided no exception to announce policy is indicated in any included recommendation.

(3) Each recommendation for promotion to the grade of colonel and lieutenant colonel and each recommendation for promotion in which an exception to existing policy is requested or indicated will be forwarded separately as an individual case.

(4) Recommendation from other than Army Air Forces units for promotion of an Air Corps officer will be handled as a separate communication and will not be included with other recommendations.

*b.* The recommendation of an authority listed in paragraph 1*c* having jurisdiction over the officer concerned and the position to be filled will be in the following form:

(1) Name, grade, serial number, date of last promotion, arm or service of officer, and grade to which recommended.

(2) Position vacancy occupied or to be occupied by officer recommended and date the position is to be created if not already activated (if not covered elsewhere in a basic recommendation).

(3) Length of time the officer has clearly demonstrated his fitness for the responsibilities and duties of the position and grade for which recommended, together with a full statement of how, when, and where he has demonstrated his fitness (if not covered fully elsewhere in a basic recommendation), with full reasons why any exception to announced policy (if requested or indicated) is warranted in his case.

(4) Statement that by filling this position by promotion and by the promotion of others previously recommended on which final action has not been reported by The Adjutant General, he will not exceed the total number of authorized grades in that arm or service under his jurisdiction.

*c.* A recommendation which does not have the approval of the appropriate authority listed in paragraph 1*c* will not be forwarded to the War Department.

[CIR. 161]

6

II.—*Special promotion system, Appendix B, MR 1-8.*—Section II, Circular No. 111, War Department, 1942, is rescinded and the following substituted therefor:

The following extract of Appendix B, MR 1-8, October 30, 1939, as changed by this circular, is published for the guidance of all concerned:

1. **Purpose.**—The instructions herein will govern as to the subsequent wartime promotion of officers of the Army of the United States provided for in basic instructions on that subject in these regulations.

2. **By whose authority promotions are made.**—All promotions are made by appointment by the President. The commanding generals of the Army Ground Forces, Services of Supply, Army Air Forces, theater commanders, army, corps area, and department commanders and the chief of each arm, service, and bureau of the War Department will make recommendations through prescribed channels for promotion of officers under their respective jurisdiction.

3. **Recommendations for promotion.**—*a.* Recommendations made by the commanders of divisions or of other units to theater commanders will be forwarded with appropriate recommendation regardless of the fact that the officers concerned may be hospitalized at some date subsequent to the original recommendation. In such cases the division or other commander will recommend an additional promotion, or the vacancy will be filled by replacement without prejudice to the original recommendation. Recommendations for promotions of hospitalized officers may be submitted to theater commanders on or after the date of hospitalization of the officer concerned.

*b.* The provisions of *a* above will also apply in the case of recommendations for promotion submitted by or through army commanders, corps area or department commanders, or chiefs of arms or services.

4. **Basis of promotions.**—Recommendations for promotions will be regarded as an essential function of command. They will be based solely on demonstrated fitness and capacity, except that selections will ordinarily be made from the next lower grade and from the appropriate arm or service in each grade.

5. **Separations.**—In order that combat units and administrative or supply organizations may be commanded by officers of appropriate grades, and to insure the flow of promotion within organizations, the following practice will obtain in regard to the preparation of returns and reports:

An officer detached or detailed from his organization for a period which will exceed thirty days will be transferred from his organization to the organization, school, or establishment to which he goes for such period. Such transfers will be considered effective at the time of departure, and officers leaving their organizations will be dropped from their rolls accordingly. In the case of leaves of absence of more than thirty days' duration, officers will be transferred to corps area or theater replacement centers at the commencement of such leaves. In the case of divisions serving in the combat zone, the above-mentioned period will be reduced to fifteen days.

6. **General.**—Within the meaning of these instructions, the term "vacancy," means that an authorized position exists and that this position either is unoccupied or is occupied by an officer of a grade lower than the authorized one. Such a position is authorized by approval of a Table of Organization or by other appropriate instructions of the War Department.

**7**                                                    [Ch. 161]

7. **Vacancies within divisions.**—Except as provided in paragraph 8, vacancies within divisions will be filled as follows:

 a. Vacancies in any grade from that next above the lowest to that of major, inclusive, occurring in any regiment or separate unit, will be filled so far as practicable by the promotion of officers of the next lower grade in the regiment or separate unit in which the vacancy occurs. In the discretion of the division commander, however, recommendation may be made to fill any such vacancy by the promotion of an officer of the next lower grade from some other source within the division.

 b. Vacancies in the grades of colonel and lieutenant colonel will be filled so far as practicable by the promotion of officers in the next lower grades, respectively, within the division.

 c. If the division is serving within the zone of the interior and the vacancies are not filled by the commanding general of the army or of the corps area under the army or corps area allotment, as described in paragraph 8, the division commander will be directed to submit recommendations for promotions to fill the vacancies, directly to the army commander, or to the corps area commander if the division is still under the latter's command.

 d. If the division is serving within a theater of operations and the vacancies are not filled by the theater commander under his allotment, as described in paragraph 8, the division commander will be directed to submit recommendations for promotions, to fill the vacancies, directly to the theater commander (furnishing copies to all intermediate higher commanders). The theater commander will then take the action prescribed in paragraph 2.

8. **Percentage allotments.**—In order to provide for the interchange of officers between rear and front and to provide necessary flexibility in policies which govern replacements furnished from schools, hospitals, and other centers, allotments may be made by army, corps area, and theater commanders. Such allotments will establish percentages which will govern the number of vacancies within divisions which will be filled by replacements. These allotments will in general not exceed 40 percent of the vacancies occurring in each grade above the lowest in each arm or service in any division. These allotments may be filled by replacements furnished by the corps area or theater in which the division concerned is serving. All other vacancies occurring in divisions will in general be filled by promotions from within the divisions in accordance with paragraph 7, except in cases where suitable officers of the next lower grades and of appropriate arms or services are not available. The percentage given above will include all replacements from all sources such as schools, convalescent centers, and replacement installations. It may include promotions recommended by the theater commander or by the corps area commander from these sources.

9. **Vacancies other than divisional.**—Vacancies which occur in corps, army, and other units which are not part of divisions will be filled in accordance with the policies stated above, except that the establishment of the percentages of vacancies to be filled by promotion from units will rest with the army, corps area, or theater commander and, in the case of General Reserve units under his control, with the commanding general concerned.

10. **Other vacancies within arms or services.**—Vacancies occurring within services or installations of the zone of the interior will be filled in accordance with the policies stated above. The establishment of the per-

[Cir. 161]

6

centages of vacancies to be filled by promotions from units will rest with the corps area or department commanders or the chiefs of arms or services concerned, subject to coordination by the War Department.

11. **Promotion of qualified disabled officers.**—Sound battlefield morale demands that officers qualified for and slated for promotion be not denied such advancement solely by reason of wounds or other disabilities incident to campaign. Theater commanders will therefore make specific provisions for such promotions, to be absorbed in the percentage allotment (pars. 8 and 9) of vacancies to be filled by replacements.

[A. G. 210.2 (5–23–42).]

By order of the Secretary of War:

G. C. MARSHALL,
*Chief of Staff.*

Official:
J. A. ULIO,
*Major General,*
*The Adjutant General.*

*Sec III added*
*Cir 290*
*1942*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FRANK SHARPS, M.D. | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:07-cv-00036 (RMC) |
| | ) |
| THE HONORABLE PETE GEREN | ) |
| Acting Secretary of the Army | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.  INTRODUCTION AND STATEMENT OF FACTS

In July 1942, plaintiff Frank Sharps, a physician who was then a first lieutenant ("1LT")

serving at the Station Hospital, Camp Gordon, Georgia, was ordered to airborne training.  AR

396.  Prior to his departure from the Station Hospital, his commander, Colonel Charles C.

Demmer recommended that 1LT Sharps be promoted to captain.  AR 425.  Demmer forwarded

his recommendation through Headquarters Camp Gordon, to the commander with promotion

authority, Commander, Fourth Corps Area, in Atlanta, Georgia. *Id.*  By the time the action

reached The Fourth Corps Area, 1LT Sharps had already departed the command for airborne

training.  Thus, on July 21, 1942, the Fourth Corps Area Commander forwarded the action to

Commanding General, Airborne Command.  AR 426.

The Commanding General, Airborne Command did not receive the July 21st dispatch.

AR 431.  Nevertheless, when 1LT Sharps arrived at his first airborne assignment, with the 505th

Parachute Infantry Regiment (PIR), he began inquiring about the status of his promotion.  At

1LT Sharps' request and on September 8, 1942, the adjutant for the 505th PIR forwarded a letter

to The Adjutant General (TAGO) seeking the status of the promotion.  AR 427.  For the next 52

days, the action initiated by the adjutant of the 505th was forwarded to and processed through a

variety of Army installations.  The following table summarizes the various items of

correspondence, each of which was identified with a sequential numerical indorsement to the

original correspondence:

| Sending Unit (AR reference) | Receiving Unit | Date | Ind. No. | Contents and Attachments |
|---|---|---|---|---|
| 505th PIR (AR 427) | TAGO, Wash. DC | 9/8/42 | | Requested information on the disposition of the promotion action initiated 7/10/42.  Listed enclosures included the original recommendation letter of 7/9/42 (AR 424) and the extract letter of 7/10/42 (AR 423).  Special Order (SO) no. 166 is also listed but is not part of the Administrative Record. |
| TAGO (AR 428) | 505th PIR | 9/16/42 | 1 | TAGO reports never receiving the original action |
| 505th PIR (AR 428) | Station Hospital, Camp Gordon, GA | 9/22/42 | 2 | The 505th requests that the original promotion action be traced before a new one is initiated. |
| Office of the Surgeon, Camp Gordon, GA (AR 429) | HQ, Camp Gordon | 9/25/42 | 3 | The hospital reports the original action was sent to HQ, Camp Gordon on 7/10/42 and by that HQ to the CG, 4th Corps Area, Atlanta, GA on 7/11/42. |
| HQ, Camp Gordon (AR 429) | 505th PIR | 9/28/42 | 4 | Apprises the 505th that the original action went to 4th Corps Area on 7/11/42 |
| 505th PIR (AR 430) | 4th Service Command, Atlanta, GA | 9/30/42 | 5 | Requesting that 4th Service Command trace the promotion action |
| 4th Service Command (AR 430) | Airborne Command, Ft. Bragg, NC | 10/9/42 | 6 | Apprising Airborne Command that the original action had been forwarded by 2nd indorsement to Airborne Command on 7/21/42.  See AR 425-26, comprising the original action and the first and |

| | | | | second indorsements as reported herein. |
|---|---|---|---|---|
| Airborne Command (AR 431) | Fourth Service Command | 10/14/42 | 7 | Reporting the non-receipt of the original action and the two forwarding endorsements |
| Fourth Service Command (AR 431) | Airborne Command | 10/20/42 | 8 | Inclosing copies of the original action and the two forwarding indorsements, i.e. AR 427-428 |
| Airborne Command (AR 432) | Army Ground Forces | 10/27/42 | 9 | Forwarding the action, apprising Army Ground Forces that 1LT Sharps was now assigned to the 503rd PIR and giving the forwarding address for the 503rd. |
| Army Ground Forces (AR 432) | TAGO | 10/30/41 | 10 | "Approved." |
| TAGO (AR 433) | 503rd PIR | 11/3/42 | 11 | Forwarding the action for execution. |

As noted in the table, on October 27, 1942, the Commander, Airborne Command, who had finally obtained a copy of the recommendation for promotion, forwarded the action by a 9th indorsement to the Commanding General, Army Ground Forces. AR 432. Notably, the 9th indorsement also apprised the Commanding General, Army Ground Forces, that 1LT Sharps had been reassigned to the 503rd PIR and that the 503rd had been deployed to the Pacific Theater. *Id.*

On October 30, 1943, the Commanding General, Army Ground Forces forwarded the action to TAGO with a one word indorsement, "Approved." *Id.* On November 3, 1942, TAGO forwarded the action to the 503rd PIR with an indorsement noting, "Attention is invited to the first indorsement and subsequent indorsements." AR 433.

TAGO's 11th indorsement never reached the 503rd and, therefore, 1LT Sharps promotion was never executed. 1LT Sharps continued to inquire about its status. In July 1943, an inquiry he initiated was forwarded to the Headquarters, Sixth Army. On July 26, 1943, Headquarters, Sixth Army replied and forwarded an indorsement to the Commander of the 503rd inviting the Commander's attention to Circular 36, U.S. Armed Forces, Far East. (USAFFE), 1943. AR 241.

3

Colonel Kenneth Kinsler, the Commander of the 503rd replied to the indorsement stating, "At this time it is not recommended that 1st Lieutenant FRANK SHARPS be promoted to next higher grade." *Id.* No further action on any promotion action regarding 1LT Sharps was ever processed.

1LT Sharps was retired from the U.S. Army with a medical disability in March 1945. AR 407. In January 1961, 1LT Sharps petitioned the ABCMR to correct his records to show a promotion to captain on the basis that a "promotion to captain was earned & approved." AR 446. Unfortunately, however, the 11 indorsements were not presented to the Board. The ABCMR denied the petition on the basis that insufficient evidence had been presented. AR 441. On February 1, 1973, 1LT Sharps petitioned the ABCMR a second time, this time submitting all eleven indorsements to his promotion action, as well as an analysis of these. AR 413-433. The ABCMR denied the petition claiming that because "Dr. Sharps had been transferred . . . from one major promoting jurisdictional authority (CG, Army Ground Forces) to another (CG, Pacific Theater) it was necessary for The Adjutant General's Office to forward Dr. Sharps' promotion recommendation to the Commanding Officer, 503rd Parachute Infantry Division (sic), Pacific Theater, for consideration." AR 411-12. No evidence in the record supported this finding.

On the contrary, the record showed that while the Executive Secretary of the ABCMR requested advice and assistance from the TAGO on what the policy for promotion was that would have governed 1LT Sharps case and whether promotion would have been effected had the action been properly processed, TAGO responded by providing a one page memo prepared in conjunction with a promotion case factually distinct from 1LT Sharps. AR 453-455. Significantly, while the memo identified War Department Circular Number 161 as the governing regulation, it did not assert that the Commanding General, Army Ground Forces was a promoting

authority separate and distinct from the Commanding General, Pacific Theater. AR 453. That conclusion finds no support in the record.

In March 2000, 1LT Sharps petitioned the ABCMR a third time. Again he asserted that his promotion had been approved by the commander with the authority to promote and that even if a recommendation was required from the Commander of the 503rd the recommendation had been unfairly withheld. The ABCMR, by a vote of 2-1, disapproved the request, again citing War Department Circular 161 and asserting that that reference required approval by the Army Personnel Board. AR 384. In fact, Circular 161 makes no reference to the Army Personnel Board. Circular 161. The dissent noted that there was no evidence that the TAGO dispatch ever reached the 503rd PIR and accordingly, it was unfair to deny 1LT Sharps the promotion. AR 387.

Moreover, in an effort to persuade the Deputy Assistant Secretary of the Army (DASA) to adopt the majority finding of the ABCMR, Bob McGowan, an ABCMR staffer and analyst provided a memo for the DASA claiming that the applicant's psychosis (a condition which post-dated the promotion actions) affected the promotion recommendation:

> I don't think he got along with his chain of command. He states that the Regt Cdr and Regt Surgeon were "guilty of gross negligence and incompetence." He adds that he wrote to TAGO about them and an investigation was conducted. His medical files indicate that part of his psychotic behavior included his rantings about not getting a "square deal from his superior officers." My guess is that if his recommendation for promotion to CPT did reach the 503rd, his cdr was not favorably disposed to support it.

AR 378. Additionally, McGowan argued that a favorable action would result in a financial windfall for 1LT Sharps:

> Since he's retired, a promotion would mean money. He draws $1330 today (as a 1LT) as opposed to $1596 (as a CPT). If the Barring Statute operates in this case, I think he'd get $30K-40K. If not, based on a 1520% increase in his retired pay since 1945, my best SWAG is $80K-160K.

5

*Id.*   Neither of these arguments was proper or relevant.   Predictably, the DASA approved

the majority findings and recommendation.  AR 280.

1LT Sharps petitioned the ABCMR again in July 2001. AR 253-377.  Once again he

asserted that his promotion action had been processed to completion and that, even if it had not,

the 503rd PIR Commander unjustly withheld his recommendation.  AR 249.  Again, the ABCMR

found that the promotion action had not been "processed to completion" (AR 249) and cited War

Department Circular 161, for the proposition that "no promotion was effective until approved by

all commanders in the chain of command and favorably acted upon by the major commander

who had the authority to promote."  AR 251.

In September 2006, 1LT Sharps petitioned the ABCMR a fifth time.  The new evidence

he presented included a report of an investigation conducted by Colonel John E. Grose, the

Inspector General for the Sixth Army.  AR 15-25.  As the report reflects, the investigation was

initiated after numerous complaints about "senior officers" in the 503rd and on the order of the

Commander, Sixth Army.  AR 15.   Colonel Grose began the investigation on October 14, 1943

but Colonel Kenneth Kinsler, the Commander, 503rd PIR, was not aware of it until October 16,

1943.  AR 15.

Beginning on October 16, 1943 and continuing for several days thereafter, Colonel Grose

took testimony from officers and enlisted men in the 503rd.  AR 15-221.  As the investigation

neared completion, on October 21, 1943, Colonel Kinsler committed suicide.  AR 23; 26.

Colonel Grose completed his report on October 25, 1943.  AR 15-29. The findings are

remarkable.  First, Colonel Grose found that many officers and enlisted men complained that

Colonel Kinsler used favoritism in the execution of his promotion authority.  AR 18.  They also

complained that the policy was unfair and uncertain AR 18-19. Accordingly, in his

recommendations for the new commander, Colonel Grose noted that, "the regimental commander [should] be informed of the deficiencies noted in the administration of the regiment in para. 18 above and impressed with the necessity for a fair and impartial promotion policy." AR 23.

1LT Sharps' petition to the ABCMR in 2006 claimed that his "promotion was fully approved by the Chain of Command." AR 8. Further, he claimed that Colonel Kinsler had unfairly and unjustly blocked denied his promotion. *Id.* The ABCMR denied relief. Again, it asserted, "There is no indication that the recommendation for promotion was ever processed to completion." AR 4. It also cited the War Circular 161 for the proposition that "no promotion was effective until approved by all commanders in the chain of command and favorably acted upon the major commander who had the authority to promote." AR 5.

(Plaintiff adopts and incorporates by reference here, those additional facts set out in his Statement of Material Facts To Which There Is No Genuine Dispute as well as the facts and argument set out in its opposition to Defendant's Statement of Material Facts To Which There Is No Genuine Dispute.)

## SUMMARY OF ARGUMENT

The 2006 decision of the ABCMR was arbitrary, capricious and not supported by substantial evidence. Specifically, the finding that the 1LT Sharps' promotion action was never "processed to completion" is plainly inconsistent with the record. The action was properly initiated by a commander with immediate supervisory authority, processed through the appropriate command channels and ultimately "approved" by the "major commander who had the authority to promote," i.e. the Commanding General, Army Forces Command. The implied finding that this action was defective because 1LT Sharps had been assigned to the 503rd and the

503rd was en route to the Pacific Theater and, therefore, the CG, Army Forces Command had no authority to promote him finds no support in the record or in the regulation relied upon by the Acting Secretary.  Even if the recommendation of the Commander, 503rd was required to complete the promotion action, the overwhelming evidence of record supports 1LT Sharps' assertion that the commander's failure to do so was unjust and inequitable.

## ARGUMENT

### 1.  Standard for Summary Judgment.

The standard for properly ordering summary judgment is well known to the court and adequately and accurately summarized in the Memorandum submitted by the Defendant. Concisely stated, summary judgment is appropriate where no material facts are genuinely in dispute and a party is entitled to judgment as a matter of law.  Rule 56, Fed. R. Civ. P.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  Once a moving makes a *prima facie* demonstration that summary judgment is appropriate, the non-moving party may not rely on its allegations, but must demonstrate specific facts about which a genuine dispute exists.  *Matsushita Elec. Indus. Co v. Zenith Radio Corp.* 475 U.S. 574, 586 (1986).

### 2. Review by the Court under the Administrative Procedures Act.

Under the Administrative Procedures Act, the Court is required to "hold unlawful and set aside agency action, findings and conclusions" which are "arbitrary, capricious, [or] an abuse of discretion" or which are unsupported by substantial evidence.  5 U.S.C. § 706.

An agency action is arbitrary and capricious if the agency "has entirely failed to consider an important aspect of the case presented to them. *Calloway v. Brownlee,* 366 F.Supp.2d 43, 53 (D. D.C. 2005) citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins., Co.,* 463 U.S. 29, 43 (1983).  Further, "the requirement that the agency action not be arbitrary and capricious

includes a requirement that the agency adequately explain its result." *Public Citizen, Inc. v.*

*FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993).  Finally, "the arbitrary and capricious standard of the

APA, 'mandates that an agency take whatever steps it needs to provide an explanation that will

enable the court to evaluate the agency's rationale at the time of the decision.'"  *Dickson v.*

*Secretary of Defense,* 68 F.3d 1396, 1404 (D.C. Cir. 1995), citing *Pension Benefit Guaranty*

*Corp. v. LTV Corp.* 496 U.S. 633, 654 (1990).

In determining whether "substantial evidence" supports a finding, "a reviewing court

must consider the record as a whole, including that which 'fairly detracts from its weight,' to

determine whether there exists 'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351

(Fed. Cir. 2006), citing *Universal Camera v. NLRB,* 340 U.S. 474, 477-78 (1951).  Substantial

evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  *Chen v. General Accounting Office,* 821 F.2d

732, 738 (D.C. Cir. 1987).

Finally, the plaintiff acknowledges his burden to show, by "cogent and clearly convincing

evidence that the military decision was the product of a material legal error or injustice."

*McDougall v. Widnall*, 20 F.Supp.2d 78, 82 (D.D.C. 2005).

> **3.**    **The finding of the Army Board for Correction of Military Records that the promotion action pertaining to 1LT Sharps was not "processed to completion" was arbitrary and capricious and is not supported by substantial evidence.**

Paragraph 7 of Defendant's Statement of Material Facts to Which There Is No Genuine

Dispute notes, "On October 30, 1942, Dr. Sharps' recommendation for promotion to captain was

***approved*** by the Headquarters, Army Ground Forces, Washington, DC and dispatched to

TAGO."[1]  War Department Circular 161 ¶ I.1.c. identifies the commanders who have final promotion approval authority, i.e. those commanders who may forward promotion actions directly to TAGO without forwarding through a superior headquarters.  The first listed is "Commanding General, Army Ground Forces." Circular 161, ¶ I.1.c. (1).  In short, the defendant Acting Secretary concedes that 1LT Sharps' promotion was acted upon by a major commander with promotion authority and forwarded to TAGO as required by Circular 161.

Yet curiously, the ABCMR refused redress because 1LT Sharps' promotion action was not "processed to completion."   AR 4.  Citing Circular 161, the ABCMR decision notes that "no promotion was effective until approved by all commanders in the chain of command and favorably acted upon by the major commander who had the authority to promote."  Both of these conditions had been satisfied.  First, as noted above, the commander with authority to promote had approved the promotion.  Second, all of the commanders in 1LT Sharps chain of command at the time the initial recommendation for promotion was made, recommended approval.  Thus, the action was forwarded with a favorable recommendation by the Station Hospital Commander to the Camp Gordon Commander and in turn to the Fourth Corps Area Commander.  AR 425.  That these recommendations were sufficient is demonstrated by the fact that Fourth Corps Area commander had the authority to forward the action directly to TAGO.  Circular 161, ¶ ¶ I.1.c.(7) & I.1.d.  He did not do so only because of the impact of ¶ I.4. of the Circular, i.e. that officers attending airborne training were deemed transferred to the school as of the date of their departure from the unit.  Accordingly, the promotion action was forwarded to the CG, Airborne Command.  AR 426.

---

[1] The language of this admission appears to have been carefully selected to avoid noting that the 9th indorsement was the action of the Commanding General not the "Headquarters."  In fact, however, the indorsement clearly notes, "For the COMMANDING GENERAL:" (emphasis in the original).  AR 432.

Although substantial processing delay intervened between the recommendations had been made and the time when the action was forwarded by the CG, Airborne Command, it was nevertheless, forwarded to the Commanding General, Army Ground Forces, a promotion authority superior to the Fourth Corps Area commander.  See Circular 161, ¶¶ I.1.c. & d. Although the Fourth Corps Area commander was not permitted to exercise promotion authority pursuant to ¶ I.4. of the Circular, nothing prohibited the Commanding General, Army Ground Forces from forwarding the promotion as "approved," and he did so.  In short, review of the record, particularly AR 427-433, unequivocally demonstrates that the action was processed to completion, that the commanders in 1LT Sharps' chain of command while he served at the Station Hospital, Camp Gordon, had recommended approval and that a major commander with promotion authority had approved it.

The ABCMR decision offers no attempt to reconcile this clear and unrebutted evidence with its findings.  It simply, on the one hand, asserts, citing War Circular 161, that promotions are effected when "approved by the all commanders in the chain of command and favorably acted upon the major commander who had the authority to promote" ¶ 12, AR 5, and, on the other, "there is no indication that the recommendation was ever processed to completion."  AR 4. It simply ignores the evidence showing that the Commander, Army Ground Forces approved the recommendation and makes no comment about it. To be sure, an agency action which fails to consider and address "an important aspect of the case presented to them" is arbitrary and capricious.  *Calloway v. Brownlee,* 366 F.Supp.2d 43, 53 (D.D.C. 2005).  Reading the actual requirements of Circular 161 – a regulation which ABCMR never reviewed – and considering the evidence, no rational observer could fairly conclude that the action had not been fully

processed.  Accordingly, the ABCMR decision is not supported by substantial evidence.  *Chen v. General Accounting Office,* 821 F.2d 732, 738 (D.C. Cir. 1987).

In an effort to salvage the ABCMR decision, the Acting Secretary contrives two arguments, neither of which was asserted by ABCMR.  First, he asserts that the requirement for chain of command recommendation should be narrowed to include only the "current" chain of command.  More specifically, he asserts that unless the recommendations were made by the commanders who exercised command authority over the officer to be promoted at the time the promotion was to be executed, the recommendations are ineffective.  Thus, he writes 1LT Sharps' "promotion to the rank of captain was never approved by all the commanders in his ***current*** chain of command" and, therefore, it was never effective.  Defendant's Memorandum of Points and Authorities in Support of His Motion for Summary Judgment, (hereafter "Defendant's Memorandum") p. 3. Similarly, he claims that "Dr. Sharps failed to establish to the ABCMR . . . that his recommendation for promotion ever received the requisite recommendations and final approval by his ***current*** chain of command.  Defendant's Memorandum, p. 7.

The addition of this new qualification of the requirement described by the ABCMR is telling.  First, it tacitly admits that there were recommendations, albeit ones from the losing command.  Second, and more importantly, it finds no support in the Administrative Record.  The memo of Colonel Peters, while it notes that chain of command recommendations are required, does not assert that these recommendations must be from the chain of command in which the recommended officer is serving at the time that the promotion is to be effected.  AR 453.  Nor does it find any support in Circular 161.  Indeed the Circular does not even require a recommendation from each commander in the chain.  Rather, it simply notes that the recommendation "will pass through the normal channels of command."  Circular 161, ¶ I.9.a.

The Acting Secretary's assertion that in order for a promotion to be effective, the officer's immediate supervisors and commanders **at the time the promotion is to be implemented** must recommend the promotion is not only unsupported by direct evidence in the record, it is contrary to reason and reality.  First, given the frequency with which both military personnel and military units are re-assigned the rule advocated by the Acting Secretary would be unworkable in peacetime and impossible in wartime, and particularly so in an era when electronic communications were, at best, uncommon.  According to the rule advocated by the Acting Secretary, once a promotion action is initiated, it must be processed to completion before the individual or the unit is reassigned or it must be re-initiated.  Such an irrational process was not described by Colonel Peters' memo (AR 453) and it was not required by Circular 161.

Second, indirect evidence from the record confirms that no requirement for recommendations from the **current** chain of command was required for a promotion action to be effected.  If such a rule did exist, no reasonable commander, knowing that the officer in question would be leaving the command within a day, would prepare a recommendation for promotion and forward it to the next superior commander for action.  Yet the Station Hospital Commander in this case did just that.  Had such a rule existed, a rational commander in this position would simply have written the gaining commander a letter suggesting that the gaining commander process a recommendation.  Similarly, the adjutant of the 505th PIR worked hard to locate and process the promotion action even after it was apparent that the action had not been completed by the Fourth Corps Area.  If promotions based on chain of command recommendations from the losing unit were ineffective, the adjutant would wisely have discontinued the tracer and simply initiated a new promotion action.  That he did not is strong circumstantial evidence that no such requirement existed.  In short, all of the commanders in this case acted as if the recommendations

of the losing chain of command could be relied upon and nothing in the Circular suggests

otherwise.

       The second argument contrived by the Acting Secretary, that the Commanding General,

Army Ground Forces did not have promotion authority over 1LT Sharps once the unit deployed

to the Pacific Theater, is equally specious.  The Acting Secretary implies, with no evidentiary

support, that at the time the recommendation was approved by the Commanding General, Army

Ground Forces, that commander was not a "major commander who had the authority to

promote:"

> The evidence of record demonstrates that on July 9, 1941 (sic) Dr. Sharps commanding officer of the Station Hospital, at Fort Gordon, Georgia, did in fact recommend his promotion to the rank of captain.  AR 243.  However, before that recommendation could be processed to completion, Dr. Sharps was transferred out of his command.  AR 305, 550, 611.  That recommendation for promotion was approved by the Commanding General of Army Ground Forces on October 30, 1942.  AR 551.  However, at the time of that approval, Dr. Sharps was no longer a member of that command, as he had deployed with the 503rd PIR to the Pacific Theater of Operations on October 20, 1942.  AR 461.  Dr. Sharps therefore came under the command of the Commanding General of the Pacific Theater of Operations.  AR 411.

Defendant's Memorandum, p. 7.  None of the references cited here and no evidentiary document

in the Administrative Record[2] supports the Acting Secretary's inference that when the 503rd PIR

– and therefore, 1LT Sharps - was deployed to the Pacific Theater, he was removed from control

– for personnel and administrative purposes – of the Commanding General, Army Ground

Forces.  On the contrary, both historical references[3] and Circular 161 demonstrate that the

contrary inference – that personnel of the 503rd PIR including 1LT Sharps remained under the

---

[2] The only document in the record making this assertion is the ABCMR letter decision of July 12, 1973.  AR 411-412. However, no evidence appears in the record which supports this claim.

[3] See for example, Military History Online.  Historian Rich Anderson notes that "The Army Ground Forces (AGF) was created in a major reorganization of the Army General Headquarters on 9 March 1942. AGF became responsible for the organization, training, and equipping of all Army units other than the Air Corps." The United States Army in World War II at http://www.militaryhistoryonline.com/wwii/usarmy/organization.aspx.

control of the Commanding General, Army Ground Forces even after the unit came under the

operational control of the Commander, Pacific Theater.  Thus, "Theater Commanders"

(subparagraph (9)) is listed subordinate to the "Commanding General, Army Ground Forces

(subparagraph (1)).  Circular 161, ¶ I.1.c.  Moreover, the instruction in ¶ I.1.d., that

recommendations for promotion of officers to the grade of lieutenant colonel and colonel must

be forwarded through the Commanding General, Army Ground Forces, while recommendations

for promotion to lower grades could be forwarded directly by a commander of a unit on the ¶

I.1.c list makes sense only if the lower listed organizations are subordinate – at least for

promotion purposes – to Army Ground Forces.  The fact that after the original promotion action

was recovered the Commanding General, Airborne Command forwarded the action to the

Commanding General, Army Ground Forces rather than to the Commander of the Pacific

Theater demonstrates that the Commanding General, Army Ground Forces retained authority to

promote.  Had the CG of Airborne Command been persuaded otherwise, he would simply have

directed the action to the Commander, Pacific Theater or to the 503rd.   And just as significantly,

the fact that Commanding General, Army Ground Forces acted on the promotion despite being

advised that 1LT Sharps had been reassigned to the 503rd and the 503rd had deployed to Pacific

Theater strongly suggests that the Commanding General had the authority to do so. The strong

presumption that "administrators of the military, like other public officers, discharge their duties

correctly, lawfully, and in good faith" underscores this point.  *Frizelle v. Slater*, 111 F.3d 172,

177 (D.C. Cir. 1997) quoting *Sanders v. United States,* 594 F.2d 804 (Ct. Cl. 1979).

In sum, while the ABCMR decision denies redress on the basis that the action was not

processed to completion, no "reasonable mind" assessing the record as a whole would draw that

conclusion.  The action was processed through the "normal channels of command," it was

approved by a "major commander with authority to promote" and it was forwarded to TAGO as required by Circular 161. Nothing further, except the ministerial act of preparing an order reflecting the promotion decision, was required. Accordingly, the ABCMR's decision that the promotion had not been processed to completion was arbitrary and capricious and not supported by substantial evidence.

> **4.** **The finding of the Army Board for Correction of Military Records that Colonel Kinsler did not unfairly and unjustly prevent the promotion of 1LT Sharps was arbitrary, capricious and was not supported by substantial evidence.**

In October 1943, the report of an IG investigation ordered by the Commander Sixth Army concluded that the promotion policy of the 503rd was unfair, uncertain and tainted with favoritism. Upon recognizing the likely findings of the IG investigation, Colonel Kinsler, the commander responsible for this policy, took his life. 1LT Sharps had complained since his first petition that prejudice and injustice in the manner in which promotions were handled in the 503rd had impacted his case. And an ABCMR staffer dismissed his complaint in a memo to the Deputy Secretary as "part of his psychotic behavior" despite the fact that this medical condition clearly arose after the injustice was alleged to have occurred. Yet when 1LT Sharps produced an IG investigation substantiating that promotions were unfair, uncertain and tainted with favoritism, the ABCMR simply dismissed the evidence because "the IG report did not recommend that the applicant be promoted to captain."

The "failure of a [review board] to respond to arguments raised by a plaintiff, which do not appear frivolous on their face and could affect the Board's ultimate disposition is arbitrary." *Calloway v. Brownlee*, 366 F.Supp.2d 43, 55, (D. D.C. 2005) citing *Frizelle v. Slater*, 113 F.3d 172, 177 (D.C. Cir. 1997). While the ABCMR certainly acknowledged that the IG had investigated the 503rd, its dismissal of the findings of that investigation by simply stating, "the IG

report did not recommend that the application be promoted" is tantamount to no response. The mandate of the IG investigator was not to determine whether any particular individual had been tarred by injustice, it was simply to determine whether the numerous complaints had a basis in fact. The ABCMR, not the IG investigator, had the authority, responsibility and moral imperative to correct injustices and errors that impact individual soldiers. 10 U.S.C. 1552, see also, Army Regulation 15-185. The plaintiff demonstrated by the presentation of the IG evidence that the promotion system in the 503rd was rife with injustice and he demonstrated that he was qualified for promotion and recommended for it by other, unbiased and evenhanded, commanders. Colonel Kinsler's unexplained refusal to recommend him for promotion may have been accorded a presumption of regularity and fairness in the absence of the IG evidence. But such a presumption was entirely eliminated by the strongly worded report of Colonel Grose and Kinsler's own admission by his suicide of its accuracy. The failure of the ABCMR to address why this did not entitle him to redress is arbitrary and capricious.

## <u>CONCLUSION</u>

The ABCMR denied plaintiff relief because his promotion action was not "processed to completion." The plain and unrebutted evidence of record demonstrates that the promotion action received the recommendation of the plaintiff's chain of command, was approved by a "major commander with authority to promote" and was forwarded to TAGO for implementation. No further processing was required. Accordingly, the finding of the ABCMR is not supported by substantial evidence. Additionally, the ABCMR's failure to adequately address the arguments made by the plaintiff concerning the unfairness and injustice of the promotion policy in the 503rd as supported by the IG report of investigation, and its impact on him, was arbitrary and capricious.

For all these reasons, the Court should grant plaintiff's motion for summary judgment and deny defendant's motion.

Respectfully submitted,

By Counsel

/Charles M. Allen/


Charles M. Allen, Esquire (VSB No. 30183) (U.S. Dist. Ct. Bar No. (D.D.C.) MI0004)
GOODMAN, ALLEN & FILETTI, PLLC
4501 Highwoods Parkway, Suite 210
Glen Allen, Virginia 23060
Telephone:     (804)346-0600
Facsimile:     (804) 346-5954

*Counsel for the Plaintiff, Frank Sharps, M.D.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FRANK SHARPS, M.D. | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:07-cv-00036 (RMC) |
| | ) |
| THE HONORABLE PETE GEREN | ) |
| Acting Secretary of the Army | ) |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment.  Based upon the motions, the oppositions and replies thereto, and in consideration of the Administrative Record, other evidence presented, and the arguments of the parties, it is this _____ day of _____, 2007 hereby

**ORDERED** that Defendant's motion is **DENIED**, it is further

**ORDERED** that Plaintiff's motion is **GRANTED,** and it is further

**ORDERED** that judgment shall be entered for Plaintiff.

**SO ORDERED**.

_____
Rosemary M. Collyer
United States District Judge

3