UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LEWIS SHARPS, M.D.<br>Personal Representative of the Estate of<br>Frank Sharps, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>THE HONORABLE PETE GREEN<br>Acting Secretary of the Army,<br><br>Defendant. | Civil Action No. 07-36 (RMC) |

## MEMORANDUM OPINION

Plaintiff Frank Sharps, M.D.,[1] entered the U.S. Army as a first lieutenant in the Medical Corps in June 1939. His Commander at Fort Gordon, Georgia, recommended him for promotion to the rank of captain on July 9, 1942. Dr. Sharps left Fort Gordon on July 10, 1942, to undergo airborne training at Fort Benning, Georgia. On that same day, the promotion recommendation was forwarded to the 4th Corps Area Commander in Atlanta, Georgia. On October 30, 1942, the promotion was approved by Headquarters, Army Ground Forces in Washington, D.C., and sent to The Adjutant General's Office ("TAGO"). In the meantime, Dr. Sharps was transferred to the 503rd Parachute Infantry Regiment ("PIR") on October 9, 1942, and deployed with the 503rd to the Pacific Theater of Operations. The promotion never came through and Dr. Sharps was honorably discharged in 1945 as a first lieutenant. He has five times applied to the Army Board for Correction of Military Records ("ABCMR"), which has denied his attempts to achieve a captain's

---

[1] Dr. Sharps died on March 21, 2007. On April 19, 2007, the Court substituted Dr. Sharps's son, Lewis Sharps, as the named Plaintiff in this action in his capacity as personal representative of his father's estate.

rank. Dr. Sharps now sues ABCMR under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), asserting that its denials have been arbitrary and capricious. Having reviewed the record carefully, the Court cannot agree and will grant ABCMR's motion for summary judgment.

## I. BACKGROUND FACTS

Without doubt, the commanding officer of the Headquarters, Station Hospital Fort Gordon, Georgia, submitted a recommendation on July 9, 1942, that First Lieutenant Sharps be promoted to captain. Without doubt, this recommendation was forwarded the following day to the next superior in the chain of command in Atlanta, Georgia. Without doubt, Dr. Sharps left Fort Gordon on July 10, 1942, and went to Fort Benning, Georgia, for airborne training. Without doubt, Dr. Sharps was transferred to the 503rd PIR at Fort Bragg, North Carolina, on October 9, 1942, and deployed with the 503rd to the Pacific Theater on October 20, 1942. Without doubt, the promotion recommendation was approved by the Headquarters, Army Ground Forces, Washington, D.C., and dispatched to TAGO. And without doubt, TAGO forwarded the recommendation on November 3, 1942, to the commanding officer of the 503rd PIR with the notation: "Attention is invited to the first indorsement and subsequent indorsements. By Order of the Secretary of War: /s/ Adjutant General."

The parties dispute whether the commanding officer of the 503rd, Colonel Kenneth Kinsler, received the full recommendation package.[2] They agree, however, that eventually Col.

---

[2] Defendant states that the promotion paperwork was forwarded to Col. Kinsler because he was then Dr. Sharps's commanding officer and his recommendation for promotion was necessary. Def.'s Stmt. of Material Facts ("Def.'s Facts") ¶ 10. Dr. Sharps argues that any direct response from Col. Kinsler would have been identified as a sequentially numbered "endorsement" on the paperwork. Col. Kinsler's response, however, was independent of that paperwork, most probably because Dr. Sharps had initiated a new promotion tracer. Pl.'s Facts at 10-11. He asserts that Col. Kinsler never saw the entire package. *Id.* On Dr. Sharps's third application to ABCMR, a dissenting member would have granted the promotion on the basis that, "[w]hile there is no record of recommendation from 503rd PIR, there is no evidence to show they got it in the 1st place." AR 387.

Kinsler responded to a tracer that he would not recommend Dr. Sharps for promotion, and the Sixth Army closed the action without further action.  *See* Pl.'s Facts at 11.

According to Defendant, the "War Department Circular in effect at that time provided that no promotion was effective until approved by all commanders in the chain of command, favorably acted upon by the major commander who had the authority to promote, and approved" by TAGO.  Def.'s Mem. at 2.  The referenced Circular, Circular 161, provided, *inter alia*:

- Recommendations for promotions of officers to grades lower than colonel and lieutenant colonel could be forwarded directly to The Adjutant General by the Commanding General, Army Ground Forces; Corps area commanders; Theater commanders, and others as specified.  *Id.* ¶ 1c.

- Recommendations for promotion were limited to existing position vacancies; recommendations for promotion to grades for which no authorized position vacancies existed could not be forwarded.  *Id.* ¶ 2a.

- The sole criterion for promotion was "demonstrated fitness and capacity for the duties and responsibilities of the next higher grade for which a position vacancy exist[ed]."  *Id.* ¶ 6a.

- "Recommendations for promotion and approval of recommendations from subordinate commanders [were] functions of command which [could not] be delegated to a staff officer."  *Id.* ¶ 7.

- Each recommendation for promotion was required to conform to the requirements of Circular 161 and to "pass through the normal channels of command."  *Id.* ¶ 9a.  *See also* II 2 ("The commanding generals of the Army Ground Forces, Services of Supply, Army Air Forces, theater commanders . . . will make recommendations through prescribed channels for promotion of officers under their respective jurisdiction[s].").

- Each recommendation was required to contain a statement that filling the new position would "not exceed the total number of authorized grades in that arm or service" under a superior officer's jurisdiction.  *Id.* ¶ 9b4.

Dr. Sharps twice requested transfer from the 503rd PIR.  His second request was approved by Col. Kinsler on October 21, 1943.  Def.'s Facts ¶ 12.  Notably, one week before Col.

Kinsler approved the transfer request, the Commander of the Sixth Army had appointed an investigating officer to investigate a lack of confidence in senior officers by lower officers and soldiers of the 503rd. *Id.* ¶ 13. Col. Kinsler committed suicide shortly before a negative report was issued on October 25, 1943. *Id.* Dr. Sharps was reassigned to the 116th Medical Battalion on January 6, 1944, and to the 186th Infantry Regiment, 41st Infantry Division, on February 16, 1944. *Id.* ¶ 14. On March 11, 1944, he suffered a service-related mental breakdown and was hospitalized. *Id.* ¶ 15. Dr. Sharps was honorably discharged by reason of permanent disability and retired in the rank of First Lieutenant on March 31, 1945. *Id.* ¶ 16. He was awarded $131.25 per month in disability retirement pay, effective February 1, 1945. *Id.*

Dr. Sharps submitted his first application to the ABCMR in January 1961, contending that his promotion to captain had been earned and approved. *Id.* ¶ 17. On March 14, 1962, ABCMR found insufficient evidence to support the promotion. *Id.* On February 1, 1973, Dr. Sharps submitted his second application to the ABCMR. *Id.* ¶ 18. This application was denied on July 12, 1973, in a decision which stated:

> In this review the Board noted pertinently that while Dr. Sharps' recommendation for promotion was forwarded to the War Department and approved for promotion by Headquarters Army Ground forces, the War Department directive governing temporary promotion of officers on active duty at the time required approval by his then current commanding officer and the major commander exercising promotional jurisdiction in the matter. In as much as Dr. Sharps had been transferred in the meantime from one major promoting jurisdictional authority (CG [Commanding General], Army Ground Forces) to another (CG, Pacific Theater), it was necessary for the Adjutant General's Office to forward Dr. Sharps' promotion recommendation to the Commanding Officer, 503rd Parachute Infantry Division [sic], Pacific Theater, for consideration. Since there was no evidence of record to show that the recommendation was favorably acted upon by his new commander and the Pacific Theater commander and in consideration of the fact that his recommendation for temporary promotion

>   did not receive final approving action by the Army Personnel Board at Departmental level,[3] it was determined that insufficient evidence had been presented to indicate probable material error or injustice in this regard.

A.R. 411-412.

Dr. Sharps again applied to ABCMR on March 25, 2000. Def.'s Facts ¶ 19. In this application, he argued that he had notified the Adjutant General's Department about gross negligence and incompetence on the part of the Commanding Officer and Regimental Surgeon of the 503rd and that, in retaliation, they blocked his promotion to captain. *Id.* In a 2-1 vote, ABCMR found that there was no record of a recommendation from the 503rd PIR Commander and that, without evidence that the promotion recommendation was approved by all commanders in the chain of command and favorably acted upon by the major commander with authority to promote, there was no basis to grant the requested relief. *Id.*

Dr. Sharps submitted a fourth application to ABCMR on July 9, 2001. *Id.* ¶ 20. With this application, he submitted documentation on the handling of his promotion, including the negative promotion recommendation from the Commander of the 503rd PIR, Col. Kinsler, and Col. Kinsler's approval of his transfer request "in view of [Dr. Sharps's] whole-hearted dissatisfaction and utter disgust with his present organization." A.R. 350. In a unanimous decision, ABCMR concluded that Dr. Sharps had failed to gain the confidence of his chain of command and it would not second-guess that promotion decision. Def.'s Facts ¶ 20.

The fifth and final application from Dr. Sharps, and the one presented to this Court for review under the APA, was submitted on September 15, 2005. *Id.* ¶ 21. Along with the

---

[3] In fact, the Army Personnel Board approved promotions to colonel and above and its approval was not needed for a promotion to captain.

application, Dr. Sharps submitted the October 25, 1943 investigative report pertaining to the faulty leadership of Col. Kinsler. *Id.* In its decision, ABCMR noted that although the report indicated that the majority of officers in the 503rd PIR felt that Col. Kinsler's promotion policy was unfair, the report did not recommend that Dr. Sharps be promoted to captain. *Id.* ABCMR concluded again that absent evidence that the promotion was approved by all commanders in the relevant chain of command and favorably acted upon by the major commander with the authority to promote, there was no basis to grant Dr. Sharps a promotion. *Id.*

Dr. Sharps filed this lawsuit on January 8, 2007. On March 19, 2007, Defendant moved for summary judgment, and on April 13 Dr. Sharps filed a cross-motion for summary judgment. The parties' briefs reveal that the material facts are largely undisputed, although the parties disagree about what conclusions follow from those facts. Both motions have now been fully briefed and are ripe for decision.

## II.  LEGAL STANDARDS

### A.  The APA.

The APA requires a reviewing court to set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001). In making this inquiry, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotation marks omitted). At a minimum, the agency must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Bowen v. Am.*

*Hosp. Ass'n*, 476 U.S. 610, 626 (1986); *see also Pub. Citizen, Inc. v. Fed. Aviation Admin.*, 988 F.2d 186, 197 (D.C. Cir. 1993) ("The requirement that agency action not be arbitrary or capricious includes a requirement that the agency adequately explain its result."). An agency action usually is arbitrary or capricious if

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S.v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also County of Los Angeles v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999) ("Where the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action.").

As the Supreme Court has explained, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. Rather, the agency action under review is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). If the district court can "reasonably discern" the agency's path, it should uphold the agency's decision. *Pub. Citizen*, 988 F.2d at 197.[4]

---

[4] For a court to have jurisdiction under the APA, the challenged agency action must be final. *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001). A final agency action "(1) marks the consummation of the agency's decisionmaking process – it must not be of a merely tentative or interlocutory nature; and (2) the action must be one by which rights or obligations have been determined or from which legal consequences will flow." *Domestic Secs., Inc. v. SEC*, 333 F.3d. 239, 246 (D.C. Cir. 2003) (internal quotation marks omitted). Here, there is no question that, under this standard, ABCMR's June 1, 2006, decision was final. As a result, this Court has jurisdiction.

### B. Summary Judgment.

Under Federal Rule of Civil Procedure 56, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party that "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson*, 477 U.S. at 248. A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving

party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III. ANALYSIS

The facts underlying the parties' contentions can be easily summarized and are not in dispute: Dr. Sharps emphasizes that his promotion to captain was initiated by his commanders at Fort Gordon and was approved all the way up the chain of command to the Commanding General, Army Ground Forces, who approved the promotion on October 30, 1942, and sent it to TAGO; the ABCMR, on the other hand, found that although Dr. Sharps's promotion was approved by his chain of command at Fort Gordon, Dr. Sharps had transferred to the 503rd PIR and deployed to the Pacific Theater of Operations before the promotion was approved and, as a result, his promotion had to be processed by his chain of command in the Pacific Theater. Thus, the resolution of this dispute turns on whether, as a matter of U.S. Army policy at the time, Dr. Sharps's promotion was dependent on approval by 503rd's commanding officer, Col. Kinsler, and the commanding general of the Pacific Theater. The policy in question can be found in Circular 161, which the ABCMR interpreted to require the recommendation and approval of Dr. Sharps's command in the Pacific Theater. That interpretation is entitled to deference, and the record does not show that the ABCMR otherwise acted arbitrarily or capriciously in denying Dr. Sharps's application for promotion to the rank of captain.[5]

---

[5] Dr. Sharps argues that ABCMR failed even to consult, much less interpret, Circular 161 because a copy of it is not contained in the Administrative Record. Pl.'s Facts at 2-7. As set forth in the Declaration of Jessie B. Strickland, however, ABCMR does not reproduce and attach the statutes, regulations and circulars relied upon in its opinions, just as this Court has not attached the precedent cited here. The fact that ABCMR did not include Circular 161 in the administrative record is of no legal significance.

Dr. Sharps challenges the ABCMR's interpretation as "contrary to reason and reality." Pl.'s Facts at 6. He argues that the frequency of reassignments of military personnel, especially during wartime and before instant communications, renders such an interpretation entirely implausible. He also notes that his promotion recommendation originated on the day before he left Fort Gordon and argues that ABCMR's interpretation cannot be correct because no commanding officer would bother to initiate a promotion for someone who would no longer be under his command. Dr. Sharps's arguments are not without logical force, but they ultimately do not persuade.

As a matter of administrative law, an agency's interpretation of its own regulations is entitled to a "high level of deference" and should be deferred to "unless it is plainly wrong." *Gen. Carbon Co. v. OSHRC*, 860 F.2d 479, 483 (D.C. Cir. 1988); *see also Auer v. Robbins*, 519 U.S. 452, 461 (1997) (holding that an agency's interpretation of a rule is "controlling unless plainly erroneous or inconsistent with the regulation"). Agency interpretation of an agency rule or regulation receives more deference than the same agency's interpretation of its authorization statute under *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). *See Consarc Corp. v. Treasury Dep't.*, 71 F.3d 909, 915 (D.C. Cir. 1995). Even when a plaintiff offers a more plausible interpretation of a regulation, it is the "agency's choice [that] receives substantial deference." *Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1327 (D.C. Cir. 1995).

By the terms of Circular 161, commanders had authority to recommend a promotion only for officers under their respective commands. *See* Circular 161 at I 1c; *see also id.* at II 2 ("The commanding generals of the Army Ground Forces, . . . theater commanders, . . . and department commanders . . . will make recommendations through prescribed channels for promotion of officers *under their respective jurisdiction[s]*.") (emphasis added). This made sense because promotions

were limited to open vacancies and could "not exceed the total number of authorized grades in that" commander's jurisdiction. *Id.* ¶ 9b4. Further, promotion recommendations were required to "pass through the normal channels of command." *Id.* ¶ 9a. Based on this language, it was not "plainly wrong" for the ABCMR to interpret Circular 161 to require recommendations from an officer's *current* chain of command before a promotion could be approved. Indeed, the recommendation of Dr. Sharps's commander at Fort Gordon was sufficient to get the promotion paperwork going, but when TAGO received the approved recommendation from the Commanding General, Army Ground Forces, it did not complete the process; rather, it forwarded the paperwork to Dr. Sharps's then-commanding officer, Col. Kinsler, for his recommendation. There is nothing unreasonable or illogical about ABCMR's conclusion that Dr. Sharps's promotion was not processed to completion.

In addition to criticizing the ABCMR's interpretation of Circular 161, Dr. Sharps argues that his records should be corrected to reflect a promotion to captain because Col. Kinsler's failure to approve the promotion was due to that officer's "'unfair and uncertain'" promotion policies. Pl.'s Reply at 1-2. He argues that Col. Kinsler acted in an arbitrary and capricious fashion in refusing to "implement" the promotion already approved by his former command structure and that ABCMR was similarly arbitrary and capricious in failing to rectify Col. Kinsler's error. *Id.* at 2. Whatever Col. Kinsler reasons were for refusing to approve Dr. Sharps's promotion, the fact remains that Dr. Sharps never received approval from his commanding officer as he was required to do under Circular 161. Thus, this is actually no different than the argument that ABCMR erred when it found the concurrence of Col. Kinsler and his superior necessary to effect Dr. Sharps's promotion. It fares no better the second time around.

Finally, Dr. Sharps argues that ABCMR repeatedly denied his request for a promotion based on the erroneous conclusion that it had not been forwarded to, and approved by, the Army Personnel Board. *See, e.g.*, A.R. 384 ("[Circular 161] provided that recommendations for captain and above would be forwarded through designated channels to TAGO for review and approval by the Army Personnel Board."). Whatever reliance ABCMR might have placed on the failure of approval by the Army Personnel Board in Dr. Sharps's earlier applications for promotion, see *supra* note 3, that reliance is not present in the 2006 ABCMR decision that is the focus of the Court's review in this case.

The relevant findings and conclusions in that decision were:

- Only 9 July 1942, a recommendation for promotion to the rank of captain was submitted by the commanding officer of Headquarters, Station Hospital, Camp Gordon, Georgia. There is no indication that the recommendation for promotion was ever processed to completion; however, the applicant submitted a request to the Adjutant General of the Army on 8 October 1942, regarding his promotion, and a tracer action was initiated.

- On 30 July 1943, the applicant's regimental commander at the time (503rd Parachute Infantry Regiment) responded to the tracer action regarding the 9 July 1942 recommendation for promotion to captain, indicating that it was not recommended that the applicant be promoted to the next higher grade at that time.

- There is no evidence of record that the applicant was recommended for promotion to the rank of captain on any other date than 9 July 1942.

- War Department Circular 161, dated 21 May 1942, governed the temporary promotion of officers on active duty. It provided, in pertinent part, [that] no promotion was effective until approved by all commanders in the chain of command and favorably acted upon by the major commander who had the authority to promote.

- Since there is no evidence of record which shows a recommendation for promotion to the rank of captain was approved by all commanders in the chain of command and favorably acted upon by the major commander who had the authority to promote, there is no basis for granting [Dr. Sharps's] request for a promotion to the rank of captain.

A.R. 4-5. The June 1, 2006 decision of ABCMR denying Dr. Sharps's application relied solely upon its interpretation of Circular 161, which the Court has found was a reasonable interpretation well within the discretion of the Board. Dr. Sharps disagrees with the interpretation, but his disagreement does not make it legal error.

### IV.  CONCLUSION

Dr. Sharps has five times applied for, and five times been denied, a correction to his military records to show that he was promoted to captain while serving in the Army during the Second World War. In its most recent denial of Dr. Sharps's request, the ABCMR examined the relevant evidence and articulated a satisfactory reason for its decision that was based on a rational interpretation of Department of War Circular 161. This Court cannot substitute its judgment for that of the ABCMR. Because the ABCMR's decision is not plainly wrong, Defendant's Motion for Summary Judgment (Docket No. 4) will be granted and Plaintiff's Motion for Summary Judgment (Docket No. 7) will be denied. A memorializing order accompanies this Memorandum Opinion.


Date: June 7, 2007                                  /s/
                                          ROSEMARY M. COLLYER
                                          United States District Judge